## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RODERICK FEACHER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN HANLEY, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:13-cv-92-EJF<br><br>Magistrate Judge Evelyn J. Furse |

This case arises out of Roderick and Terona Feacher's attempt to save their home from foreclosure.  To that end, the Feachers contracted with Preferred Law, PLLC ("Preferred Law") a Utah law firm.  But the Feacher's ultimately lost their home.  They then filed this action against Defendants Jonathan Hanley, Modification Review Board ("MRB"), Preferred Law, and Benjamin Horton, alleging claims of intentional misrepresentation, negligent misrepresentation, fraud, and alter ego, in addition to a malpractice claim against Defendant Benjamin Horton.  In response, Defendants[1] filed a motion to stay this case and compel arbitration based on the arbitration clause in the Fee and Representation Agreement the Feachers signed with Preferred Law.  The Feachers claim the contract is unconscionable, and the Court should not enforce the arbitration provision.

---

[1]  Defendant Jonathan Hanley filed a Notice of Bankruptcy on April 16, 2013.  (ECF No. 18.)  The Court stayed the case as to Defendant Hanley only.  *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) (noting automatic stay does not apply to solvent co-defendants).

The Court carefully considered the Motion, Memoranda, and materials submitted for and against Defendants' Motion and held a hearing on October 11, 2013.  (*See* ECF No. 33.) Because the Court[2] finds the contract the Feachers signed with Preferred Law unconscionable, the Court denies Defendants' Motion.

## FACTUAL BACKGROUND

In April 2012, the Feachers sought help to obtain a loan modification.  Through their research they discovered Defendant MRB's website.  The Feachers contacted MRB to discuss their situation.  MRB told the Feachers it would review their situation and, if the review had a positive result, refer them to Preferred Law for further assistance.

Eventually, MRB told the Feachers Preferred Law accepted them as clients.  In early June 2012, a Preferred Law employee e-mailed a Fee and Representation Agreement (the "Contract"), drafted by Preferred Law, to the Feachers.  Preferred Law gave the Feachers forty-eight hours or less to sign and return the Contract "so [it could] get started on [their] modification."  (ECF No. 27-1 at 6.)  The Feachers state they followed the instructions and signed the Contract and faxed it back to Preferred Law without reading it.  At oral argument, counsel for Preferred Law represented that this is the only contract Preferred Law ever offered with these services, and it never had any clients modify the agreement.

In mid-June 2012, Wells Fargo notified the Feachers of its intent to foreclose on their home on August 30, 2012.  The Feachers contacted Preferred Law for assistance.  Eventually, in October 2012, Ms. Feacher returned home to find an eviction notice.  The Feachers ultimately lost their home.

---

[2] The parties consented to the exercise of jurisdiction by the undersigned Magistrate Judge under 28 U.S.C. § 636(c).  (ECF No. 21.)

**DISCUSSION**

The Contract at issue includes a clause that states the parties will resolve all disputes between them "by submission to and litigation in the SMALL CLAIMS DIVISION OF THE SALT LAKE COUNTY JUSTICE COURT OF UTAH."  (Def.'s Br., Ex. A at 5, ECF No. 11.) The Contract provides that the parties will resolve any dispute arising from matters within the Contract not subject to the Small Claims Division's jurisdiction through arbitration as provided by Utah law.  (Id.)  However, the Feachers argue the Contract they signed with Preferred Law is unconscionable, and therefore Preferred Law may not compel arbitration.[3]  See Sosa v. Paulos, 924 P.2d 357, 359 (Utah 1996) (citation omitted) (noting "under Utah law, an unconscionable agreement is not enforceable").

Although Defendants filed this Motion citing the Federal Arbitration Act ("FAA"), the Contract at issue states that Utah law applies and that "BORROWER MAY BE COMPELLED TO ARBITRATE UNDER UTAH LAW . . . ."  (Id.)  At the October 11 hearing, this Court asked Defendants' counsel whether the FAA, 9 U.S.C. § 1 et seq., or the Utah Uniform Arbitration Act ("UUAA"), Utah Code Ann. § 78B-11-101 et seq., govern this dispute's arbitrability.  The Court finds the arbitration agreement is invalid because the Contract is unconscionable, and therefore the arbitration agreement is unenforceable under either the FAA or the UUAA.  Compare 9 U.S.C. § 2 (making arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"), with Utah Code Ann. § 78B-11-107(1) (making arbitration agreements "valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract").

---

[3] Although the Feachers raised the issue of other Defendants' ability to force arbitration, the issue is moot because the Contract is unconscionable.

### A. The Contract is Unconscionable

The question of unconscionability presents a question of law for the Court to decide. *Sosa*, 924 P.2d at 360. "A party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998) (citation omitted). Utah courts apply a two-pronged analysis to determine whether a contract is unconscionable. *Id.* (citing *Sosa*, 924 P.2d at 360). "The first prong—substantive unconscionability—focuses on the agreement's contents. The second prong—procedural unconscionability—focuses on the formation of the agreement." *Id.* (citation omitted). Substantive unconscionability alone may render a contract invalid. *Sosa*, 924 P.2d at 361 (citation omitted). And although a determination of procedural unconscionability alone may invalidate a contract, "that would be rare." *Id.*

### 1. Substantive Unconscionability

"[S]ubstantive unconscionability focus[es] on the contents of the agreement, examining the 'relative fairness of the obligations assumed.'" *Sosa*, 924 P.2d at 361 (citation omitted). "[A] showing of substantive unconscionability requires evidence that a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'" *Id.* at 362 (citation omitted). "The terms of the contract should be considered '"according to the mores and business practices of the time and place."'" *Id.* at 361 (quoting *Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1042 (Utah 1985)).

The Feachers argue the Contract is substantively unconscionable because it wholly favors Preferred Law. First, the Feachers point out the Contract limits Preferred Law's liability to the fee paid by the Feachers. Second, the Contract provides Preferred Law with liquidated damages of $250 if the Feachers chargeback a credit card payment for any reason. (Mem. Opp'n 7, ECF No. 26.) Third, the Feachers note the Contract allows Preferred Law to withdraw immediately

from representing the Feachers or place their file on hold but provides no opportunity to cancel the Contract to the Feachers.  (*Id.*)  Finally, the Feachers note the Contract specifically excludes *the* service the Feachers sought:  loan modification.  (Mem. Opp. 7–8, ECF No. 26.)  Although the Feachers allege they discussed the necessary steps for obtaining a loan modification, (*e.g.*, Compl. ¶ 32, ECF No. 2), the Contract states "PREFERRED LAW DOES *NOT* PERFORM THE FOLLOWING SERVICES: . . . LOAN MODIFICATION ASSISTANCE."  (Def.'s Br., Ex. A at ¶ 1, ECF No. 11.)

### i. Limited Liability

The provision limiting Preferred Law's malpractice liability to the amount of the fee paid under the Contract raises a serious concern in any contract for legal services.  While a provision limiting liability may appear in other types of contracts, lawyers may not prospectively limit liability as a matter of their ethical obligations without meeting very strict requirements.

Rule 1.8 of Utah's Rules of Professional Conduct provides that lawyers shall not "make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client *is* independently represented in making the agreement."  Utah R. Prof'l Conduct 1.8(h)(1) (emphasis added).  Utah Rule of Professional Conduct 1.8(h)(1) adopts the ABA Model Rule of Professional Conduct 1.8(h)(1).  *See* ABA Model Rules of Prof'l Conduct 1.8(h)(1).  The comment to the rule explains the problem:

> Agreements prospectively limiting a lawyer's liability for malpractice are prohibited unless the client is independently represented in making the agreement because they are likely to undermine competent and diligent representation.  Also, many clients are unable to evaluate the desirability of making such an agreement before a dispute has arisen, particularly if they are then represented by the lawyer seeking the agreement.

Utah R. Prof'l Conduct 1.8(h), comment [14].  Although the Utah Rules of Professional Conduct

do not "create a basis for civil liability," *Archuleta v. Hughes*, 969 P.2d 409, 414 (Utah 1998),

the Court finds the provision relevant evidence of "the mores and business practices of the time

and place," *Ryan*, 972 P.2d at 402 (citation omitted).

      Preferred Law, recognizing this rule, put boilerplate language into the contract stating:

"BORROWER ACKNOWLEDGES THAT HE OR SHE HAS HAD ADEQUATE TIME TO

SEEK INDEPENDENT COUNSEL AND IS NOW CURRENTLY REPRESENTED IN

MAKING THIS AGREEMENT IN LIMITING PREFERRED LAW'S POTENTIAL

MALPRACTICE AND OTHER LIABILITY TO BORROWER."  (Def.'s Br., Ex. A at ¶ 8, ECF

No. 11.)  Although the Contract requires the Feachers to acknowledge they had adequate time to

seek independent counsel and had representation in making the agreement, the facts here show

that the Feachers did not have separate counsel prior to signing the Contract and did not know of

the provision.  The Feachers had at most two days to review the Contract.  Further, neither side

claims anyone from Preferred Law or MRB ever mentioned the paragraph or made any inquiry

about separate representation.

      "Because the attorney-client relationship involves professional and fiduciary duties on the

part of the lawyer that generally are not present in other relationships, the retainer contract may

be subject to special oversight and review."  ABA Comm. on Ethics & Prof'l Responsibility,

Formal Op. 02-425 (Retainer Agreement Requiring the Arbitration of Fee Disputes and

Malpractice Claims); *see also Hodges v. Reasonover*, 2012-0043 (La. 7/2/12); 103 So. 3d 1069,

1073 ("agreements between law firms and clients are held to higher scrutiny than normal

commercial contracts because of the fiduciary duties involved").  Attorneys must obtain a

client's informed consent where a course of action may adversely affect the client's interest.  The

Utah Rules of Professional Conduct state "'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct."  Utah R. Prof'l Conduct 1.0(f).[4]

No evidence suggests Prferred Law ever explained that the Contract limited liability to the fee paid by the Feachers.  The harm the Feachers allege they suffered, loss of their home, far exceeded the amount they paid Preferred Law in fees—a problem that could frequently arise in legal contract cases.  Thus, without explanation from Preferred Law and without separate counsel, the Feachers' consent does not qualify as informed.  This limit on Preferred Law's liability to less than its potential liability under common or statutory law makes the Contract suspect.  Failure to comply with the requirements of Rule 1.8(h) alone may invalidate a malpractice liability waiver.  *See In re Thompson*, 116 B.R. 679, 682 (Bankr. W.D. Ark. 1990) (finding malpractice release invalid because of lack of evidence attorney complied with requirements of Rule 1.8(h)); ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 ("The Committee agrees that mandatory arbitration provisions are proper unless the retainer agreement insulates the lawyer from liability or limits the liability to which she otherwise would be exposed under common or statutory law."); *see also Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 825 (2010) (affirming trial court's denial of motion to compel arbitration

---

[4] In the context of an arbitration agreement, Preferred Law should have explained the possible consequences of entering into the agreement.  *See Hodges*, 103 So. 3d at 1077 ("In the context of attorney-client arbitration clauses . . . the lawyer has an obligation to fully explain to the client the possible consequences of entering into an arbitration clause, including the legal rights the client gives up by agreeing to binding arbitration.").  No evidence suggests Preferred Law explained the arbitration clause to the Feachers.  Instead, Preferred Law apparently failed to comply with the requirements of Rule 1.0(e) and 1.8(h).

where arbitration clause in an adventure travel provider's contract, which limited liability to amount paid, was unconscionable).

Although a violation of the Rules of Professional Conduct does not necessarily violate the law, the Court finds Preferred Law's apparent failures relevant to the Court's determination of whether the Contract is substantively unconscionable because they do provide evidence of the mores and business practices at issue.  *See Ryan*, 972 P.2d at 402 (noting courts determine substantive unsconscionability "according to the mores and business practices of the time and place").

### ii. Liquidated Damages

The Contract provides Preferred Law with liquidated damages of $250 if the Feachers chargeback a credit card payment for any reason.  The Feachers argue this term adds to the imbalance between the parties' rights and obligations under the Contract.  (Mem. Opp'n 7, ECF No. 26.)

Liquidated damages clauses "are enforceable if designed to provide fair compensation for a breach based on a reasonable relation to actual damages." *Robbins v. Finlay*, 645 P.2d 623, 625–26 (Utah 1982) (citation omitted).  Although this liquidated damages clause may be unenforceable, the Feachers do not present evidence to suggest it lacks a "reasonable relation to actual damages." *See id.*  Accordingly, this term, without more, does not require a finding of substantive unconscionability.

### iii. Withdrawal

The Feachers note the Contract allows Preferred Law to withdraw immediately from representing the Feachers or place their file on hold but provides no opportunity to cancel the Contract to the Feachers.  The Contract grants Preferred Law this right in the event the Feachers

fail to make timely payments, fail to cooperate with or follow Preferred Law's advice on a material matter, or if a situation arises that would make Preferred Law's continued representation of the Feachers unethical or unlawful.  (Def.'s Br., Ex. A ¶ 4, ECF No. 11.)

Utah Rule of Professional Conduct 1.16 sets forth the circumstances under which attorneys may terminate representation.  The grounds for withdrawal listed in the Contract are based on circumstances described in Rule 1.16.  However, the Contract's grounds would include circumstances beyond those permitted by Rule 1.16.  For example, Rule 1.16(b)(5) permits a lawyer to terminate representation where "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled."  Although the Rule requires reasonable warning, the Contract allows Preferred Law to withdraw without notice if, for example, the Feachers simply made a late payment.

A lawyer may also withdraw where the client uses the lawyer's services for actions the lawyer reasonably believes are criminal or fraudulent, where the client already "has used the lawyer's services to perpetrate a crime or fraud" or where "the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement."  Utah R. Prof'l Conduct 1.16(b)(2)–(4).  By contrast, the Contract allows Preferred Law to withdraw if the Feachers "fail[] to cooperate with or follow advice on a material matter."  (Def.'s Br., Ex. A ¶ 4, ECF No. 11.)  This could include situations beyond the intended scope of Rule 1.16.

That the Contract permits Preferred Law such broad withdrawal rights creates particular concern here because Preferred Law did not represent the Feachers in a court action; were that the case, the court would have had oversight of Preferred Law's withdrawal.  The lack of such

court oversight makes the Feachers vulnerable with regard to Preferred Law's withdrawal rights. While Preferred Law could have exercised its contract rights within the bounds of legal ethics, this term raises concerns of substantive unconscionability when placed in the context of the entire contract.

### iv. Exclusion of Loan Modification Services

The Feachers also argue the Contract is substantively unconscionable because it excludes the service the Feachers sought and Preferred Law/MRB agreed orally Preferred Law would perform:  loan modification assistance.  (*See* Mem. Opp'n 5–8, ECF No. 26.)  A court may find a contract substantively unconscionable where "a term is 'so one-sided as to oppress or unfairly surprise an innocent party.'"  *Sosa*, 924 P.2d at 362 (citation omitted).

Here, the Feachers paid Preferred Law approximately $4,000 for loan modification services Preferred Law promised to perform.  The Contract, however, specifically precludes loan modification services.  The Contract states:  "PREFERRED LAW DOES *NOT* PERFORM THE FOLLOWING SERVICES: . . . LOAN MODIFICATION ASSISTANCE."  (Def.'s Br., Ex. A at ¶ 1, ECF No. 11 (emphasis in original).)  This provision that specifically excludes the service both parties discussed providing indicates an extreme imbalance.  By contrast, Preferred Law's own documents state that a Preferred Law employee told the Feachers prior to their signing the Contract they had forty-eight hours or less to return the Contract so they could "get started on your modification."  (ECF No. 27-1 at 6.)  While the parties may have had a contract, the parties did not have a meeting of the minds on this contract.  Because the Contract specifically precludes the one service the Feachers sought, and because other terms discussed above demonstrate an unfair imbalance favoring Preferred Law over the Feachers, the Court finds the Contract as a whole substantively unconscionable.

## 2. Procedural Unconscionability

"Procedural unconscionability focuses on the negotiation of the contract and the circumstances of the parties." *Ryan*, 972 P.2d at 403 (citation omitted).  "[The] principle inquiry is whether there was overreaching by a contracting party occupying an unfairly superior bargaining position."  *Id.* (citation omitted).  Utah courts look to the following factors:

> (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions.

*Id.* (citation omitted).  "None of the factors is dispositive; rather, [courts] consider all the circumstances in light of the doctrine's purpose to prevent oppression and unfair surprise."  *Id.*

In *Sosa*, the Utah Supreme Court found the arbitration agreement between a patient and doctor unconscionable.  Someone in the defendant doctor's office asked Ms. Sosa to sign three documents less than an hour before her surgery.  *Sosa*, 924 P.2d at 359.  In one of the three documents Ms. Sosa agreed to arbitration.  *Id.*  Feeling "rushed and hurried" and believing she had to sign to proceed with the procedure, Ms. Sosa signed the documents without reading them.  *Id.* at 362.  "In short, Ms. Sosa was in a vulnerable position when she was shown the document for the first time and asked to sign it."  *Id.* at 363.

The Utah Supreme Court reached the opposite conclusion in *Ryan*.  In *Ryan*, a grocery store employee argued an acknowledgment form that identified him as an at-will employee constituted an unconscionable contract.  *Ryan*, 972 P.2d at 402.  The court found the plaintiff had a reasonable opportunity to understand the terms of the acknowledgment form and that his employer had discussed the terms with him.  *Id.* at 404.  The court also found the employer did

not use deceptive practices. *Id.* Although the employer drafted the form and Ryan had no opportunity to negotiate the at-will term, the court stated "these factors alone do not render the acknowledgment unconscionable" and noted employers almost always draft employment agreements. *Id.* The court specifically distinguished *Sosa*, contrasting Ryan's "meaningful choice in deciding whether to accept the terms of the agreement" with Ms. Sosa's "vulnerable position when she signed the arbitration agreement." *Id.* at 403.

The Court now considers the above-listed factors, bearing in mind *Ryan* and *Sosa*. The first factor asks whether each party had a reasonable opportunity to understand the terms and conditions of the agreement. Here, the Feachers assert Preferred Law e-mailed them the Contract while on the phone with a Preferred Law employee, Mr. Kartchner. The Feachers state Mr. Kartchner told them the Contract outlined everything the Feachers had discussed with him over the previous several weeks and instructed the Feachers to sign and return the Contract immediately. Preferred Law contends its employee e-mailed the Contract to the Feachers two days before the Feachers's phone call with Mr. Kartchner. In considering this factor the Court notes that unlike in *Miller v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1346 (D. Utah 2011), where the court found a college enrollment agreement's arbitration provision not unconscionable, the Feachers's Contract with Preferred Law did not provide for a period of time after execution during which the Feachers could have cancelled the Contract. The facts show the Feachers neither read nor understood the Contract's terms. While a party to a contract generally has a duty to read the contract, procedural unconscionable behavior can negate that duty. *Sosa*, 924 P.2d at 363.

The second and third factors ask whether the recipient of the contract lacked the opportunity for meaningful negotiation and whether the proponent of the agreement printed it on

a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position. Here, Preferred Law drafted the Contract, which it admits is a standard form contract.  Although the Feachers allege MRB told them to sign and return the Contract immediately, Defendants' counsel—who is also a Defendant—said Preferred Law would have negotiated the Contract had the Feachers asked.  However, Preferred Law admitted no client had ever modified this contract, although this is the only contract used for these services.  Given the apparent rush placed on the Feachers to sign and return the Contract, and the lack of modification by any party in the Feachers' position, Preferred Law provided no apparent opportunity for negotiation.

Factor four asks whether the proponent of the contract explained the terms of the agreement to the weaker party.  Here, the Feachers submitted a declaration that states Mr. Kartchner told them the Contract "stated everything [the Feachers] had discussed with Mr. Kartchner in the previous six weeks."  (R. Feacher Decl. ¶ 9, ECF No. 26-1.)  According to Mr. Feacher's declaration, Mr. Kartchner also told the Feachers the Contract "contained the guarantee to secure a loan modification for [the Feachers] and guaranteed to keep [the Feachers'] house safe from foreclosure."  (*Id.* ¶¶ 10–11.)  The Contract, however, does not contain these guarantees.  Neither, claim the Feachers, does the Contract represent the discussions between the Feachers and Defendants over the six weeks prior to execution of the Contract.  The Feachers thought Preferred Law would provide loan modification services, but the Contract precludes that service.  Thus, while Defendants apparently provided some explanation of the Contract, that explanation appears inaccurate and deceptive in that it lulled the Feachers into signing a contract they had not read and did not understand.

Notably, Paragraph 16 of the Contract states: "Borrower acknowledges and represents that he or she has had reasonable opportunity to seek independent legal counsel and is currently

represented by independent counsel in signing this agreement." (Def.'s Br., Ex. A at ¶ 16, ECF No. 11.) The parties dispute how long the Feachers had the Contract before Mr. Kartchner instructed them to sign and return it: Under Defendants' version, two days; under the Feacher's version, the duration of a phone call. Under either version the Feachers had a near impossibly short amount of time in which to engage separate counsel, and in any event did not have separate counsel, let alone receive legal advice.

The Court also notes the extreme imbalance in power between the Feachers and Preferred Law/MRB. The Feachers are not sophisticated consumers of legal services. In the face of losing their home to foreclosure they searched the Internet and found MRB who connected them with Preferred Law. The Feachers relied upon Preferred Law/MRB to save their home. Because Preferred Law and MRB are closely connected, Mr. Kartchner's explanation of the Contract terms applies to MRB and Preferred Law. For example, the Feachers allege, and the Defendants have not contested, that MRB and Preferred Law's websites are the same apart from the names attached to each. (*See* Compl. ¶ 23, ECF No. 2.) They also share the same address. (*Id.* at ¶ 24.) Defendant Jonathan Hanley owns both MRB and Preferred Law. (*Id.* at ¶ 3.) MRB refers clients, like the Feachers, to Preferred Law for services identified on MRB's website. MRB bolsters the desire for Preferred Law's representation by touting both its success and exclusivity. MRB and Preferred Law held themselves out as experts in the field of mortgage modifications. Preferred Law, as discussed earlier, held itself out as a fiduciary for its clients by offering them legal services. Under these circumstances, the Feachers occupied much weaker bargaining power.

Factor five asks whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement. The Utah Supreme Court discussed this factor

at some length in *Ryan*, comparing that case with *Sosa*.  In *Sosa*, the Utah Supreme Court found a medical arbitration agreement unconscionable.  The plaintiff in *Sosa* received an arbitration agreement minutes before her scheduled for surgery.  *Sosa*, 924 P.2d at 363.  Neither the surgeon nor any of his staff explained the agreement to the plaintiff, who was already "dressed in her surgical clothing, was quite nervous about the surgery, and felt rushed and hurried."  *Id.*  The Utah Supreme Court invalidated the arbitration agreement, noting the plaintiff's vulnerable position.  *Id.*

In *Ryan*, however, the proponent of the contract, a grocery store which employed the plaintiff in its pharmacy, gave the plaintiff "an opportunity to review the [contract] and ask questions, both of which [he] did."  *Ryan*, 972 P.2d at 404.  The plaintiff conceded he understood the disputed term—an at-will provision.  *Id.*  The plaintiff in *Ryan* argued the proponent of the contract coerced his assent by refusing to provide his pay check until he agreed to the at-will term.  *Id.*  The Utah Supreme Court noted the plaintiff still had a choice—he could have refused to sign the agreement and then obtained his paycheck or he could have signed the form, quit his employment with the grocery store, and thereafter received his paycheck.  Although he may have preferred to work at the grocery store's pharmacy, he remained free to seek employment at a pharmacy that did not require an at-will term.  *Id.*

This case does not closely resemble *Ryan* or *Sosa*.  The Feachers may have had up to two days to review the Contract and decide whether to sign it, but even that amount of time would hardly have allowed enough time for the Feachers to seek and obtain independent legal counsel, as the Contract required.  While the Feachers could have opted not to sign the Contract and sought assistance from other sources, they faced the imminent foreclosure of their home, and this circumstance made them vulnerable, particularly because they had already spent six weeks

-15-

working with MRB to try to get Preferred Law to accept them as clients.  Thus, the Feachers'
case leans slightly more toward *Sosa* than *Ryan*.

      Finally, the sixth factor asks whether the stronger party employed deceptive practices to
obscure key contractual provisions.  The Feachers have provided some evidence to suggest the
Defendants employed deceptive practices.  As noted in the discussion of factor four, the Feachers
state Mr. Kartchner told them the Contract represented the discussions between the parties and
contained a guarantee the Feachers would receive a loan modification that would save their
home.  Although the Contract contains no guarantee and specifically excludes loan modification
services, Preferred Law does not affirmatively contradict the Feachers' statements about the
verbal guarantee.  Further, Mr. Kartchner's assurances regarding the Contract dissuaded a close
reading of the Contract thus avoiding detection of the discrepancies between the verbal
representations and the Contract.

      In light of the discussion above, the Court finds the Contract both substantively and
procedurally unconscionable.  The Contract terms—which specifically exclude the service the
Feachers sought—favor Preferred Law to an extent it unfairly oppressed, and no doubt surprised,
the Feachers.  Additionally, Defendants rushed the Feachers into signing the Contract without
allowing them a reasonable opportunity to read and understand the Contract or obtain
independent legal counsel.  Even under Defendants' version of the facts—where a Preferred Law
employee e-mailed the Contract to the Feachers two days before their conversation with Mr.
Kartchner—the Feachers had an unreasonably short period of time in which to seek and obtain
independent counsel, which would have enabled them to make an informed decision.  Although
the Feachers did not find themselves in as vulnerable a position as the plaintiff in *Sosa*, the threat
of losing their home placed the Feachers in a vulnerable position.  The Court also notes

Defendants' use of deception in telling the Feachers the Contract represented their discussions with Defendants and contained a guarantee weighs heavily in favor of a finding of procedural unsconsionability.

Because the Court finds the Contract unconscionable both substantively and procedurally, the Court denies Defendants' Motion to stay this case and compel arbitration.  *See* 9 U.S.C. § 2 (noting arbitration agreements may be invalidated on the same grounds for the revocation of a contract); Utah Code Ann. § 78B-11-107(1) (same).

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to stay this case and compel arbitration.  The Court FURTHER ORDERS Defendants to answer or otherwise respond to the Complaint within 21 days of this Order's entry.

DATED this 10th day of January, 2014.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge

-17-